UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00167-GNS-HBB

PATRICK TURNER, as Administrator
of the Estate of Skylor Turner; and
NATALIE MOORE, Mother and Next Best
Friend of B.N.T., Infant Child of
Skylor Turner                                                                                                    PLAINTIFFS

v.

JOEY WHITE et al.                                                                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment (DN 63), Defendants' Motion to Exclude (DN 69), and Plaintiffs' Motion for Leave to File Excess Pages (DN 71).[1]  The motions are ripe for adjudication.

I.   BACKGROUND

On the morning of November 11, 2020, Skylor Turner ("Turner") was lodged as a pretrial detainee at the Adair County Regional Correctional Facility Jail (the "jail"). (Compl. ¶ 2, DN 1-1).  Defendant Joey White ("White") was the Jailer of Adair County at all times relevant to this action.  (Compl. ¶ 3).  At that time, Defendants Amanda Hancock ("Hancock"), Jeff Dickson ("Dickson"), Wayne Tester ("Tester"), Tyler Coffey ("Coffey"), Brooke Grant ("Grant"), Devin Akin ("Akin"), Cameron Dearmond ("Dearmond"), and Kyle Powell II ("Powell") were all employed as deputy jailers at the jail (White and the deputy jailers are collectively referred to as "Defendants").  (Compl. ¶ 4).  When Turner was booked into the jail, Coffey, Grant, and Tester

---

[1] Because the relief requested in Plaintiffs' motion for leave is reasonable, and because Defendants did not file a response, the motion is granted.

1

were on duty. (Coffey Dep. 42:23-43:1, Aug. 25, 2022, DN 63-2; Grant Dep. 8:22-23, July 25, 2022, DN 63-4; Tester Dep. 12:9-16, Aug. 3, 2022, DN 63-3). During his booking, Coffey asked Turner a series of medical screening questions including a question about whether Turner was thinking about suicide, to which Turner answered "No." (Coffey Dep. Ex. 1, at 1, DN 63-2). Turner was then placed in a conference room being utilized as an overflow cell. (*See* White Dep. 55:8-56:6, July 25, 2022, DN 63-5). Turner was checked on throughout the day until around 4:06 PM, when Coffey gave Turner a restroom break. (*See* Coffey Dep. 64:2-8, 66:5-11, 68:17-25, 77:18-25, 79:23-80:25, 81:10-17, 83:2-8, 84:10-16, 86:19-87:3, 95:11-12; Defs.' Mem. Supp. Mot. Summ. J. 4, DN 63-1 [hereinafter Defs.' Mem.]; Pls.' Resp. Defs.' Mot. Summ. J. 11 n.10, DN 73 [hereinafter Pls.' Resp.]). At 5:00 PM on November 11, Powell came on duty. (Powell Dep. 15:13-16, Aug. 3, 2022, DN 63-11). At 6:00 PM, Coffey, Grant, and Tester went off duty and Akin, Hancock, and Dickson began their shifts. (Coffey Dep. 30:5-7; Grant Dep. 8:22-23; Hancock Dep. 7:18-19, July 25, 2022, DN 63-6; Dickson Dep. 6:1-2, July 25, 2022, DN 63-9; *see* Tester Dep. 40:5-7; Akin Dep. 8:1-4, Aug 3, 2022, DN 63-10). At around 2:30 AM, November 12, Akin left his shift early because he was feeling ill and was replaced by Dearmond. (Akin Dep. 8:1-4, 10:11-1; Dearmond Dep. 9:3-10, 11:4-5, July 25, 2022, DN 63-8).

Jail policy required that the jailers do an hourly check of all the prisoners. (*See* White Dep. 79:4-80:2). The jail used a "grease board" to keep track of where each prisoner was being housed. (*See* White Dep. 67:21-68:12). It is undisputed that after the restroom break that occurred around 4:06 PM, no one checked on Turner until he was discovered dead shortly after 3:00 AM on November 12. (*See* Defs.' Reply Mot. Summ. J. 8-9, DN 77; Pls.' Resp. 2).

Plaintiffs Patrick Turner and Natalie Moore, on behalf of Turner's estate and his minor children, respectively, (jointly "Plaintiffs") filed suit in Adair Circuit Court (Kentucky) asserting

2

claims against Defendants under federal law for violation of Turner's Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983 and under state law for gross negligence, negligence per se, and intentional infliction of emotional distress.[2]  (Compl. ¶¶ 47-55).  Defendants removed the action to this Court.  (Notice Removal, DN 1).

## II.  JURISDICTION

Jurisdiction in this action is based on federal question and supplemental jurisdiction.  *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

## III.  STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine

---

[2] Claims against Adair County and its Fiscal Court members were previously dismissed. (Mem. Op. & Order, DN 72).

3

dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

### IV. DISCUSSION

#### A. Analysis

Defendants seek summary judgment on all of Plaintiffs' claims. Plaintiffs concede Defendants' motion as to their: (1) claims under the Eighth Amendment; (2) state law claims against Defendants in their official capacities; and (3) claim for intentional infliction of emotional distress or outrage. (Pls.' Resp. 26 n.19, 42 n.24, 48). Accordingly, summary judgment is granted as to these claims. Plaintiffs oppose the motion as to their Fourteenth Amendment claims against Defendants in their individual and official capacities and their remaining state law claims against Defendants in their individual capacities only.

#### 1. *Official Capacity Claims*

"Suits against municipal employees in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F. Supp. 3d 532, 541 (W.D. Ky. 2020) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (quoting *Graham*, 473 U.S. at 166).

"To prevail in a [Section] 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)). "A municipality 'may not be sued under [Section] 1983 for

4

an injury inflicted solely by its employees or agents.'" *Id.* (quoting *Monell*, 436 U.S. at 694).

The Sixth Circuit has explained that:

> There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Id.* (citations omitted).

Plaintiffs' official capacity claims here are based on the third "avenue," "a policy of inadequate training or supervision." *Id.* (citations omitted); (*See* Pls.' Resp. 29). The Sixth Circuit explained that:

> To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.

*Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286-87 (6th Cir. 2020) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)).

"A *Monell* claim requires proof that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" *Eurton v. Thomas*, No. 3:22-CV-00508-GNS, 2023 WL 3611558, at *2 (W.D. Ky. May 23, 2023) (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)), *cert. denied*, No. 23-259, 2024 WL 218779 (U.S. Jan. 22, 2024). "Considerably more proof than a single incident is necessary to establish both the requisite fault on the part of the municipality, and the casual connection between the policy and the constitutional deprivation." *Lamb v. Telle*, No.

5:12-CV-00070-TBR, 2013 WL 5970422, at *3 (W.D. Ky. Nov. 8, 2013) (citing *City of Okla. City. v. Tuttle*, 471 U.S. 808, 823 (1985)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Horn v. City of Covington*, No. 14-73-DLB-CJS, 2018 WL 3865377, at *30 (E.D. Ky. Aug. 14, 2018) (quoting *Connick*, 563 U.S. at 62).

"'[I]n a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 63 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). In such circumstances, the failure to train must reflect the municipality's deliberate indifference to a "'highly predictable' . . . violation[] of constitutional rights." *Id.* at 64 (quoting *Bryan Cnty.*, 520 U.S. at 409). The Supreme Court gave the example of "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

Plaintiffs argue that White, as the Adair County Jailer, failed to properly train the deputy jailers on jail policy related to the psychological care of inmates. (Pls.' Resp. 32). As explained in the section that follows, however, Plaintiffs do not dispute that no one observed Turner during and after the time he began exhibiting behavior that could have indicated he was suicidal. (Pls.' Resp. 2; *see* Daniel Dep. 82:22-24, 96:22-97:4, Mar. 31, 2023, DN 63-7). Therefore, there is no causal link between Plaintiffs' asserted lack of training on these policies and Turner's death. *See Kimmons v. Fulton Cnty. Det. Ctr.*, No. 5:22-CV-34-TBR, 2022 WL 2873673, at *2 (W.D. Ky. July 21, 2022) ("A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged

6

constitutional deprivation." (citing *Monell*, 436 U.S. at 694)); *Williams v. Nice*, 58 F. Supp. 3d 833, 839 (N.D. Ohio 2014) (granting summary judgment because, *inter alia*, the plaintiff failed to offer a causal link between the lack of training and the alleged constitutional violation).

Plaintiffs further argue that Defendants were not properly trained or supervised with respect to their duty to conduct hourly checks on the inmates. (Pls.' Resp. 33-34). The record reflects that all of the deputy jailers were aware that they were responsible for conducting hourly checks. (Coffey Dep. 30:12-16; Tester Dep. 14:11-19; Grant Dep. 11:2-9; Hancock Dep. 21:6-22:4; Dickson Dep. 7:5-8; Akin Dep. 15:14-16; Powell Dep. 28:15-18; Dearmond Dep. 15:16-16:11). While it is undisputed that, after that certain point, jail personnel failed to conduct the requisite hourly checks on Turner, Plaintiffs have not pointed to any other previous violation of an inmate's constitutional rights at the jail due to a failure to properly conduct regular checks on the inmates. (*See* Defs.' Reply Mot. Summ. J. 8-9; Pls.' Resp.). This is fatal to Plaintiffs' *Monell* claim. *See, e.g.*, *Ashby v. Louisville Metro Corr. Med.*, No. 5:18-cv-00048-TBR, 2020 WL 1281250, at *4 (E.D. Ky. Mar 17, 2020) (granting summary judgment where the plaintiff failed to provide evidence of unconstitutional conduct on more than one occasion). There is simply no evidence that White should have been aware that hourly checks were not occurring. Therefore, Plaintiffs have failed to supply evidence that White, in his capacity as Adair County Jailer, was the "moving force" behind the failure to conduct the hourly checks. *Eurton*, 2023 WL 3611558, at *2 (quoting *Jackson*, 925 F.3d at 828).

Plaintiffs also argue that White "knew or should have known of the clear potential for the deprivation of the constitutional rights of inmates housed in the conference room . . . ." (Pls.' Resp. 35). Plaintiffs point to White's testimony that he was written up by the Department of Corrections due to use of the conference room as a cell. (White Dep. 94:13-19). Read in

7

context, however, nothing about White's testimony indicates that the write-ups were due to a concern that the conference room created an increased risk of self-harm but instead appear to have been because the conference room did not have toilet facilities. (*See* White Dep. 94:13-19). There is simply no evidence that use of the conference room as housing rendered violations of an inmate's constitutional rights a "highly predictable consequence." *Connick*, 563 U.S. at 64 (quoting *Bryant Cnty.*, 520 U.S. at 409). Further, there is no evidence of a pattern of similar violations resulting from the conference room or any other instances of suicide at the jail.

Based on the foregoing, Plaintiffs have failed to supply evidence creating a genuine issue of material fact that White acted with deliberate indifference to a pattern of constitutional violations or to a policy of training or supervision that rendered Turner's suicide a "highly predictable consequence." *Connick*, 563 U.S. at 64 (quoting *Bryan Cnty.*, 520 U.S. at 409). Plaintiffs have further failed to create a genuine issue of material fact that White, in his official capacity, was the "moving force" behind Turner's suicide. *Eurton*, 2023 WL 361158, at *2 (quoting *Jackson*, 925 F.3d at 828). Therefore, the motion is granted as to Plaintiffs' remaining claims against Defendants in their official capacities.

    **2.**  ***Individual Capacity Claims***

"Under the Fourteenth Amendment, pretrial detainees have a 'right to adequate medical care.'" *Downard ex rel. Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (quoting *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005)). Before the Sixth Circuit's decision in *Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021), courts in this circuit historically analyzed Fourteenth Amendment pretrial detainee claims "under the same rubric" as Eighth Amendment Prisoner Claims. *Mercer v. Athens Cnty.*, 72 F.4th 152, 160 (6th Cir. 2023) (quoting *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018)). Eighth Amendment claims require proof of

deliberate indifference on the part of the prison official. *See id.* Proof of deliberate indifference has an objective and subjective component and requires proof that the "prison official knew that the prisoner 'face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). In *Brawner*, the Sixth Circuit "modified the subjective component 'of the deliberate-indifference test for pretrial detainees.'" *Id.* (citing *Brawner*, 14 F.4th at 596). The Sixth Circuit has explained that:

> After *Brawner*, to survive summary judgment on a deliberate indifference claim, a pretrial detainee must "present evidence from which a reasonable jury could find (1) that she had an objectively serious medical need; and (2) that [the defendant's] action (or lack of action) was intentional (not accidental) and [the defendant] either (a) acted intentionally to ignore [the detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [the detainee.]"

*Id.* at 160-61 (alterations in original) (quoting *Brawner*, 14 F.4th at 597).

Here, Defendants do not argue that Turner lacked an objective medical need but focus on the second prong, Defendants' awareness of the need. (*See* Defs.' Mem. 11-15). To prove the subjective prong of deliberate indifference in the context of a pretrial detainee, a plaintiff must prove, "more than negligence but less than subjective intent—something akin to reckless disregard." *Mercer*, 72 F.4th at 161. Pre-*Brawner*, in the context of prison suicides, the subjective component was "satisfied with proof that a prison official drew an inference from the available facts that there was a 'strong likelihood' of prisoner suicide, but then disregarded that risk by failing to take adequate precautions to mitigate the risk." *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 333 (6th Cir. 2013) (quoting *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005)). Post-*Brawner*, the subjective component may be satisfied with proof that a defendant recklessly failed to draw an inference from the available facts that there was a 'strong likelihood'

9

that Turner would commit suicide, or that a defendant drew the inference but recklessly failed to take adequate precautions to mitigate the risk. *See Brawner*, 14 F.4th at 596-97. Showing deliberate indifference to a strong likelihood of suicide "is a high bar and typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Downard*, 968 F.3d at 601. Each Defendant must be considered individually. *Mercer*, 72 F.4th at 161 ("We consider each defendant individually because we 'cannot "impute knowledge from one defendant to another[.]"'" (alteration in original) (quoting *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022))).

### a. White

It is undisputed that White was not present at all during Turner's detainment. (White Dep. 69:1-6). Therefore, it would have been impossible for White to be subjectively aware or in reckless disregard of Turner's serious medical need. Accordingly, summary judgment is granted as to Plaintiffs' Section 1983 claims against White in his individual capacity.

### b. Grant

Plaintiffs do not contest that Grant's duty at the jail was to check on the female prisoners. (Grant Dep. 10:23-11:9; *see also* White Dep. 68:13-19). Plaintiffs' expert, Dr. Anasseril Daniel ("Dr. Daniel"), testified that he had no criticism of Grant's conduct. (Daniel Dep. 129:7-19). Therefore, there is no genuine issue of material fact that Grant did not recklessly fail to act. Accordingly, summary judgment is granted as to Plaintiffs' Section 1983 claim against Grant in her individual capacity.

### c. Hancock

Likewise, there is no question that Hancock lacked responsibility to monitor or check on Turner as her main job function was to deal with female prisoners. (Hancock Dep. 7:4-6; White Dep. 68:13-15). Plaintiffs' expert, Dr. Daniel, testified that he had no criticisms of Hancock's conduct. (Daniel Dep. 125:24-126:5). Therefore, there is no genuine issue of material fact that Hancock did not recklessly fail to act. Accordingly, summary judgment is granted as to Plaintiffs' Section 1983 claim against Hancock in her individual capacity.

### d. Coffey

Coffey was on duty on November 11 until 6:00 PM. (Coffey Dep. 30:5-7). His responsibilities included passing out food trays, booking people in and out, and doing hourly checks on the inmates. (Coffey Dep. 30:12-16). Coffey booked Turner into the jail and asked him a series of standard medical screening questions, including a question regarding suicidal ideation which Turner denied. (Coffey Dep. 42:23-43:1; Coffey Dep. Ex. 1, at 1). Coffey testified that he checked on Turner throughout his shift. (Coffey Dep. 64:2-8, 66:5-11, 68:17-25, 77:18-25, 79:23-80:25, 81:10-17, 83:2-8, 84:10-16, 86:19-87:3). Coffey documented that he gave Turner a bathroom break at 4:30 PM, although the parties agree that, based on the video, this is likely in reference to a break that occurred shortly before 4:06 PM. (Defs.' Mem. 4; Pls.' Resp. 11 n.10). Defendants do not dispute that Coffey did not check on Turner after this encounter and that his shift ended at 6:00 PM. The jail's policy required that the deputy jailers conduct a check of every inmate once every hour, and Coffey was aware of this policy. (White Dep. 106:18-107:7; Coffey Dep. 26:11-15). Plaintiffs argue that by failing to conduct another check between 4:06 and 6:00 PM, Coffey acted with deliberate indifference to Turner's serious medical need. (Pls.' Resp. 39-40).

11

Coffey's "failure to follow policy alone is insufficient to support a claim for deliberate indifference." *Mercer*, 72 F.4th at 161 (citing *Hyman v. Lewis*, 27 F.4th 1233, 1238 (6th Cir. 2022). In *Mercer*, the Sixth Circuit, examining a claim of deliberate indifference to a serious medical need, looked to what the prison official knew or should have known based on his interactions with the prisoner. *Id.* at 161-62. There, the prison official, a nurse, was aware of the prisoner's symptoms but still failed to seek any medical assistance. *Id.* The Court determined that "a jury could find that Nurse Gray's observations of [the decedent], the information provided to him by other jail officials and inmates, and SEORJ's guidelines and policies should have led Nurse Gray to seek care from a doctor or hospital for [the decedent]." *Id.* at 162.

Applying the same analysis here, there is no evidence that at any point Coffey was aware or could have drawn the inference that Turner had developed a serious medical need. Turner denied having any suicidal thoughts and Coffey testified that in his interactions with Turner were unremarkable. (Coffey Dep. Ex. 1, at 1; Coffey Dep. 103:20-104:5). Dr. Daniel testified that Turner became a suicide risk sometime after 4:06 PM, and that if anyone, with proper training, had observed him they would have put him under observation for possible suicidal behavior. (Daniel Dep. 82:22-24, 96:22-97:4). Plaintiffs do not dispute that Coffey did not observe Turner after the 4:06 PM bathroom break and that monitoring the camera feeds was not one of Coffey's job responsibilities on that day. (Pls.' Resp. 2, 8-9; *see also* Coffey Dep. 31:5-10). Based on these facts, while Coffey apparently failed to conduct an hourly check on Turner that Plaintiffs allege would have allowed Coffey to ascertain Turner's serious medical need, Coffey never saw or interacted with Turner after the 4:06 PM bathroom break and therefore was never aware of the behavior that may have indicated to the deputy jailers that Turner had a serious medical need. Missing the 5:00 PM check on Turner before Coffey's shift ended one hour later is not enough to

12

show reckless disregard for Turner's safety absent some proof that Coffey was aware of the risk that Turner had become suicidal, which Dr. Daniel says occurred after the 4:06 PM break. *Cf. Slone v. Lincoln Cnty.*, 242 F. Supp. 3d 579, 592 (E.D. Ky. 2017) (noting that "[f]ailure to provide 20–minute checks is not *prima facie* evidence of deliberate indifference." (citing *Bradley v. City of Ferndale*, 148 F. App'x 499, 507 (6th Cir. 2005)). Therefore, Coffey did not recklessly disregard any facts that would have indicated to him that there was a strong likelihood that Turner would commit suicide. *Downard*, 968 F.3d at 601 (quoting *Galloway*, 518 F. App'x at 336). Accordingly, the motion is granted as to Plaintiffs' Section 1983 claim against Coffey in his individual capacity.

e.  **Tester**

A similar analysis follows for Tester, who was the supervisor on Coffey's shift. (*See* Tester Dep. 7:9-12). Plaintiffs do not dispute that, like Coffey, Tester did not check on or observe Turner after 4:06 PM. (Pls.' Resp. 2). While the facts indicate that Tester failed to comply with jail policy, as explained above, this alone is insufficient to establish deliberate indifference. (White Dep. 106:21-107:7); *Mercer*, 72 F.4th at 161 (citing *Hyman*, 27 F.4th 1238). Absent some knowledge of Turner's condition, Tester's failure to conduct a single hourly check before the conclusion of his shift at 6:00 PM is insufficient to establish deliberate indifference to a strong likelihood that Turner would commit suicide. *Downard*, 968 F.3d at 601 (quoting *Galloway*, 518 F. App'x at 336). Accordingly, the motion is granted as to Plaintiffs' Section 1983 claim against Tester in his individual capacity.

f.  **Dickson**

Dickson began his shift as Supervisor at 6:00 PM and was still working when Turner was discovered dead shortly after 3:00 AM. (Dickson Dep. 6:1-6; *see* Hancock Dep. 6:8-18).

13

Dickson does not dispute that no one checked on Turner during his shift until 3:00 AM when Hancock delivered Turner's breakfast and found Turner dead. (Dickson Dep. 8:15-19). Dickson testified that he failed to check on Turner because he was unaware that Turner was in the conference room. (Dickson Dep. 7:9-17). Dickson testified that he does not recall being told that Turner was in the conference room and that he checked the grease board but does not recall seeing Turner's name there. (Dickson Dep. 7:17-8:7). Even assuming that Turner's name was on the grease board and that Dickson was told that Turner was in the conference room, that only establishes that Dickson was aware of Turner's location, but does not establish that Dickson recklessly failed to infer that there was a strong likelihood that Turner would commit suicide. *Galloway*, 518 F. App'x at 333 (quoting *Gray*, 399 F.3d at 616). Plaintiffs argue that the jail's policy informed the jailers that a serious medical need could arise during confinement, which should have put them on notice that regular checks were essential. (Pls.' Resp. 37). This argument is unavailing. Even accepting that Dickson, and the other deputy jailers, were aware of this policy, "it is not enough to establish that an official may have acted with deliberate indifference to some possibility of suicide, or even a likelihood of suicide; the test is a strong likelihood of suicide." *Downard*, 968 F.3d at 601 (quoting *Galloway*, 518 F. App'x at 336). Viewing the facts in the light most favorable to Plaintiffs, they have only established that Dickson may have acted with deliberate indifference to "some possibility of suicide." *Id.* (quoting *Galloway*, 518 F. App'x at 336). Accordingly, the motion is granted as to Plaintiff's Section 1983 claim against Dickson in his individual capacity.

### g. Akin

Like Dickson, Akin's shift began at 6:00 PM. (Akin Dep. 6:17-21). Akins was scheduled to work until 6:00 AM, but he left at 2:30 AM due to illness. (Akin Dep. 8:1-4, 10:11-

14). Akin testified that Coffey told him that Turner was in the conference room, but that the grease board did not reflect that fact. (Akin Dep. 6:17-25). Akin admitted that he did not check on Turner during the duration of his shift because he had forgotten that Turner was in the conference room. (Akin Dep. 13:1-12). Like with Dickson, even accepting that Akin should have known about Turner's location, Plaintiffs have failed to point to any facts that would have indicated to Akin that there was a strong likelihood that Turner was going to commit suicide. *Downard*, 968 F.3d at 601 (quoting *Galloway*, 518 F. App'x at 336). Accordingly, the motion is granted as to Plaintiffs' Section 1983 claim against Dickson in his individual capacity.

### h. Powell

Powell was scheduled from 5:00 PM to 5:00 AM. (Powell Dep. 15:13-16). Powell worked in the "control room," meaning that he was able to observe camera feeds showing the jail's inmates. (Powell Dep. 10:9-25). It is undisputed that shortly before 5:00 PM, Turner hid and was no longer visible on camera and remained off camera for the rest of the night. (*see* Daniel Report 2-3, DN 39-2). Dr. Daniel testified that it was the time period after 4:06 PM, when Coffey had taken Turner for a bathroom break, and before he went off camera, during which Turner displayed signs indicating he was at risk of committing suicide. (Daniel Dep. 82:22-24, 96:22-97:4). Therefore, since Powell's shift began at 5:00 PM, he did not have an opportunity to observe Turner's suicidal behavior.

Powell also testified that over the duration of his shift, he did not know that Turner was in the conference room. (Powell Dep. 28:15-18).[3] He stated that he did not check the jail's

---

[3] Plaintiffs suggest that because Akin was told that Turner was in the conference room and visited Powell in the control room, the inference can be made that Akin told Powell that Turner was in the conference room. (Pls.' Resp. 16 n.16). Neither Akin nor Powell testified that Akin told Powell that Turner was in the conference room. Accordingly, this argument does nothing more than raise a "metaphysical doubt" as to Powell's testimony that he was not told about

15

management system to learn that Turner was in the conference room. (Powell Dep. 28:19-23). As with Dickson and Akin, even if Powell should have been aware that Turner was in the conference room, Plaintiffs have failed to point to evidence indicating Powell could have inferred that there was a strong likelihood Turner was going to commit suicide. *Downard*, 968 F.3d at 601 (quoting *Galloway*, 518 F. App'x at 336). Accordingly, the motion is granted as to Plaintiffs' Section 1983 claim against Powell in his individual capacity.

### i. Dearmond

Dearmond was called in to work to replace Akin after he had fallen ill and arrived at the jail around 2:00 AM. (Dearmond Dep. 9:3-10, 11:4-5). Dearmond testified that he checked the grease board when he arrived and did not see anyone listed as being in the conference room and was therefore unaware that Turner was being housed there. (Dearmond Dep. 15:16-16:11). Dearmond explained that he did not become aware of Turner until he heard Hancock request assistance in the conference room shortly after 3:00 AM, when Turner was found dead. (Dearmond Dep. 14:19-15:4, 17:18-18:7). Like with the other Defendants, Plaintiffs have failed to supply evidence that Dearmond was aware of facts from which he could have inferred that there was a strong likelihood that Turner was going to commit suicide. *Downard*, 968 F.3d at 601 (quoting *Galloway*, 518 F. App'x at 336). Accordingly, the motion is granted as to Plaintiffs' Section 1983 claim against Dearmond in his individual capacity.

### j. Conclusion

Viewed in the light most favorable to Plaintiff, the facts clearly indicate that some error or miscommunication on the part of Defendants caused Turner to be forgotten after 4:06 PM. Plaintiffs have failed, however, to point to any evidence to create genuine issue of material fact

---

Turner. *Garvin v. Ethicon, Inc.*, 616 F. Supp. 3d 658, 667 (W.D. Ky. 2022) (quoting *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586).

that any defendant could have inferred that there was a strong likelihood that Turner was going to commit suicide. *Downard*, 968 F.3d at 601 (quoting *Galloway*, 518 F. App'x at 336). Accordingly, summary judgment is granted as to Plaintiffs' Section 1983 claims against Defendants in their individual capacities.

###    B.    Remaining Claims

Having dismissed Plaintiffs' Section 1983 claims against Defendants in both their individual and official capacities, all that remains are Plaintiffs' state law negligence claims against Defendants in their individual capacities, over which this Court exercised supplemental jurisdiction under 28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." Because all federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). This action is therefore be remanded to Adair Circuit Court.

##    V.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiffs' Motion for Leave to File Excess Pages (DN 71) is **GRANTED**.

2. Defendants' Motion for Summary Judgment (DN 63) is **GRANTED IN PART** as to: (a) all of Plaintiffs' claims against the remaining Defendants in their official capacities; (b) Plaintiff's 42 U.S.C. § 1983 claims against the remaining Defendants in their individual capacities; and (c) Plaintiffs' state law claims for intentional infliction of emotional distress against Defendants in their individual capacities.

3. Defendant's Motion to Exclude (DN 69) is **DENIED AS MOOT**.

4. This Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and this matter is **REMANDED** to Adair Circuit Court (Kentucky). The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

February 20, 2024

cc: counsel of record
Clerk, Adair Circuit Court (Civil Action No. 21-CI-00200)

3. Defendant's Motion to Exclude (DN 69) is **DENIED AS MOOT**.

4. This Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and this matter is **REMANDED** to Adair Circuit Court (Kentucky). The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

February 20, 2024

cc: counsel of record
Clerk, Adair Circuit Court (Civil Action No. 21-CI-00200)